Paul A. Stewart (SBN 153,467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Jared C. Bunker (SBN 246,946)
Jared.Bunker@knobbe.com
Nicole R. Townes (SBN 272,342)
nicole.townes@knobbe.com
Brandon G. Smith (SBN 307,676)
brandon.smith@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiff
**simplehuman, LLC**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SIMPLEHUMAN, LLC,<br>a California limited liability<br>company,<br><br>Plaintiff,<br><br>v.<br><br>ITOUCHLESS HOUSEWARES<br>AND PRODUCTS, INC.,<br>a California corporation, and<br>MICHAEL SHEK, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:19-cv-02701-HSG<br><br>**PLAINTIFF'S OPENING CLAIM<br>CONSTRUCTION BRIEF**<br><br>Honorable Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION .................................................................................... 1

    A.    The Design Patents ...................................................................... 1

    B.    The Utility Patent ........................................................................ 4

II.   ARGUMENT ........................................................................................... 5

    A.    The Disputed Lines In The Design Patent Drawings Should
           Be Construed As Contour Lines, Not Visible Seams .................... 5

    B.    The Utility Patent ...................................................................... 10

          1.    Claim Construction Principles and the Level of
               Ordinary Skill ................................................................. 10

          2.    The Disputed Terms ....................................................... 12

               a.    "the enclosing wall having a recess at its
                     bottom end" ................................................. 12

               b.    "curved recess panel" ............................................. 15

               c.    "foot pedal partially positioned in the recess
                     panel" ...................................................................... 17

               d.    "positioned inside the periphery of the shell" .......... 19

               e.    "link assembly" ...................................................... 21

III.  CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

**Page No(s).**

*Acromed Corp. v. Sofamor Danek Group, Inc.*,
253 F.3d 1371 (Fed. Cir. 2001) ............................................................22, 23

*Acumed, Inc. v. Stryker Corp.*
483 F.3d 800 (Fed. Cir. 2007) ....................................................................16

*Custom Accessories, Inc. v. Jeffrey-Allan Indust., Inc.*,
807 F.2d 955 (Fed. Cir. 1986) ....................................................................11

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) ......................................................5

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) ..................................................................20

*Litton Indust. Prods., Inc. v. Solid State Sys. Corp.*,
755 F.2d 158 (Fed. Cir. 1985) ....................................................................11

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ..................................................................16

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250 (Fed. Cir. 1999) ..............................................................22, 23

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ..............................................................................14, 19

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...........................................*passim*

*Saverglass, Inc. v. Vitro Packaging, LLC*,
130 F. Supp. 3d 747 (E.D.N.Y. 2015) .....................................................9, 10

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
135 S.Ct. 831 (2015) ..................................................................................10

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997) ..................................................................13

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) ..................................................................22

## OTHER AUTHORITIES

35 U.S.C. § 112.........................................................................................5, 22

37 C.F.R. § 1.152........................................................................................5, 6

America Invents Act § 3 ..............................................................................22

# I.  INTRODUCTION

Plaintiff simplehuman is a leading designer and seller of household and commercial trash cans and other products.  Three of simplehuman's most popular trash cans are shown below.

 

simplehuman protects its innovative products with patents and other intellectual property rights.  These three popular trash cans are no exception.  For example, the oval trash can shown above and to the left is protected by U.S. Design Patent No. D644,807 ("the D807 Patent").  Declaration of Paul A. Stewart in Support of simplehuman's Opening Claim Construction Brief ("Stewart Decl."), Ex. 1.  The dual compartment trash can shown in the center is protected by U.S. Design Patent No. D729,485 ("the D485 Patent").  Stewart Decl., Ex. 2.  And the trash can with the foot pedal shown to the right is protected by U.S. Patent No. 6,626,316 ("the '316 Patent").  Stewart Decl., Ex. 3.

simplehuman brought this action against Defendant iTouchless because iTouchless has copied all three of these products and infringed all three patents.  This brief addresses a single legal dispute relating to the construction of the two design patents, and five disputed claim terms of the '316 Patent.

## A.  The Design Patents

Each of the two design patents claims the ornamental design of a trash can.  The parties dispute the legal significance of certain lines that appear in the drawings

of the two design patents.  The disputed lines in the D807 Patent are identified by the red arrows below, in an annotated version of Figure 1 of the D807 Patent.



Similarly, the disputed lines in the D485 Patent are identified by the red arrows below, in an annotated version of Figure 1 of the D485 Patent.



1       iTouchless contends that all of the highlighted lines are seams which allegedly

2   are visible markings on the surface of the trash can.  iTouchless misunderstands

3   design patents. The highlighted lines are contour lines that show the three-

4   dimensional contours of the claimed design.  For example, in Figure 1 of the D485

5   Patent above, the lines circled in blue mark the point where the flat sides of the trash

6   can begin to curve to form a rounded corner.

7       simplehuman's prosecution of the D485 Patent unmistakably shows that the

8   disputed lines in each of the D485 and D807 Patents are contour lines.  As part of

9   the application that became the D485 Patent, simplehuman included a photograph

10  embodying the claimed design. The side-by-side comparison of this photograph

11  against a representative figure from the D485 Patent unmistakably shows that the

12  disputed lines are contour lines that illustrate the three-dimensional nature of the

13  claimed design through a two-dimensional figure.  Declaration of James M. Gandy

14  ("Gandy Decl."), Ex. O at 8; Stewart Decl., Ex. 2 at Fig. 1.

| Photograph From D485 Application | Figure 1 of D485 Patent |
| --- | --- |
|  |  |

1      simplehuman respectfully requests that the Court construe the claims of each

2 of the design patents such that the disputed lines represent contour lines, not surface

3 ornamentation.

4 **B.**    <u>**The Utility Patent**</u>

5      The '316 Patent is directed to trash can assemblies that include a shell, a foot

6 pedal positioned adjacent the bottom of the shell, and a lid fitted over the top of the

7 shell.  Stewart Decl., Ex. 3 at Abstract.  A portion of the foot pedal is positioned

8 inside the periphery of the shell.  *Id.*  A link assembly couples the foot pedal to the

9 lid.  *Id.*  Figures 1 and 3 from the '316 Patent are reproduced below.



FIG.1                    FIG. 3

      The parties dispute the construction of the following five claim terms:

- "the enclosing wall having a recess at its bottom end" (Claim 1);

- "curved recess panel" (Claims 1, 7, 15);

- "foot pedal partially positioned in the recess panel" (Claims 1, 15);

- "positioned inside the periphery of the shell" (Claims 1, 2, 3, 15);

1        • "link assembly" (Claims 1, 15).

2  The first four of these disputed claim terms require no clarification or construction.

3  They are readily understandable to a juror and can be readily applied by a juror in

4  assessing infringement.   To the extent the Court disagrees and concludes that a

5  construction is necessary, simplehuman proposes straight-forward constructions

6  based on the definition of "recess" as an "indentation."   iTouchless, on the other

7  hand, proposes constructions that are overly narrow and not supported by the plain

8  language of the claims or other intrinsic evidence, such as the specification and file

9  history.  For some of these terms, iTouchless goes even further and asserts that they

10  are indefinite.  This argument fails, however, because the claim language in view of

11  the specification conveys to an ordinary artisan the scope of the invention with

12  reasonable certainty.

13        The parties agree the fifth claim term ("link assembly") should be construed

14  as a "means-plus-function" term under 35 U.S.C. § 112 ¶ 6.  They disagree, however,

15  on the proper construction of the means for performing the recited function.

16  iTouchless again pushes an overly narrow construction that incorporates many

17  unnecessary limitations, in contravention of Federal Circuit caselaw.

18                              **II.  <u>ARGUMENT</u>**

19  **A.**     <u>**The Disputed Lines In The Design Patent Drawings Should Be**</u>

20         <u>**Construed As Contour Lines, Not Visible Seams**</u>

21        Claim construction of a design patent is appropriate to "describe[e] the role of

22  particular conventions in patent drafting, such as the role of broken lines."  *Egyptian*

23  *Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc).  This case

24  involves another patent drafting convention – the use of lines to denote changes in

25  contour, rather than surface ornamentation.

26        The use of contour lines in design patent drawings is expressly authorized by

27  regulation:  "Appropriate and adequate surface shading should be used to show the

28  character or contour of the surfaces represented."  37 C.F.R. § 1.152.  The Patent

Office official who authored this regulation has submitted a declaration explaining that the disputed lines in simplehuman's design patent drawings are indeed contour lines of the type authorized by 37 C.F.R. § 1.152, and are not seam lines or any other form of surface ornamentation.  Gandy Decl. ¶¶ 1-2, 18-30.

As Mr. Gandy explains, an amendment to the regulation in 1997 added the word "adequate" to the phrase "adequate surface shading" to emphasize that any surface shading used in a drawing "needed only be the minimum 'adequate' to show the contour."  *Id*. ¶ 22 and Ex. E thereto.  In the time since that 1997 amendment, it has become common place to include "a simple solid line to define where changes in contour occur on a claimed design."  *Id.* ¶ 25.

Design patents often incorporate a single line to represent a change in contour. *Id.* ¶¶ 26-27 and Exs. G-N.  For example, Ford Motor Company obtained a design patent for the design of the hood of a car, Figure 1 of which is shown below.



*Id.* ¶ 26 and Ex. G.  As Mr. Gandy explains, the highlighted lines on the hood indicate changes in contour on the hood, not seam lines or visible stripes of any kind.  *Id*.

1    Even more directly on point, the PTO issued a design patent for a "trash
2 container," Figure 1 of which is shown below.



As can be seen, this drawing of a trash container has single, solid vertical lines
representing changes in the contour of the trash container.  *Id.* ¶ 26.  Specifically,
the lines indicate where two surfaces of the trash container begin to curve to form a
rounded corner or a change in angle.  *Id.* ¶ 26.

    Consistent with these examples, Mr. Gandy explains that the disputed lines in
the D807 and D485 Patents "are intended to define where changes in contour on the
claimed design occur."  *Id.* ¶ 28.  These lines "do not reflect seams in the product
design."  *Id.*  This is illustrated below.

/ / /

/ / /



*See* Gandy Decl., Exs. B and C; *also* Stewart Decl., Exs. 1 and 2.

This conclusion is confirmed by the file history of the D485 Patent.  Gandy Decl. ¶¶ 29-30.  The file history shows that the patent application originally included a sixth figure, which was a photograph of the patented product.  This photograph is shown below.



*Id.* ¶ 29 (citing Ex. O at 8).  The inclusion of this photograph in the original patent application clearly shows the inventor's intent to claim a container having smooth curves without any visible seam lines.  *Id.* ¶¶ 29-30.  Ultimately, the Examiner required the inventor to omit the photograph from the patent because "Photographs and ink drawings are not permitted to be combined as formal drawings in one application."  *Id.* (quoting 37 C.F.R. § 1.152).  Nevertheless, it is clear from a comparison of the photograph to the drawings that the disputed lines in the drawings represent changes in contour, not seams.

 

This is also confirmed by the case law.  For example, in *Saverglass, Inc. v. Vitro Packaging, LLC*, 130 F. Supp. 3d 747 (E.D.N.Y. 2015), the court construed U.S. Design Patent No. D526,197, which includes the following drawing.

/ / /

/ / /

/ / /

/ / /

/ / /



The court held in its construction of this design that "[o]blique lines shown on the surfaces of the bottle in FIGS. 1-7 ***represent shading and contour lines, not surface ornamentation***. *Id.* at 753 (emphasis added). Similarly here, the disputed lines in the figures of simplehuman's design patents are contour lines, not surface ornamentation.

Accordingly, this Court should construe the disputed lines of the D807 and D485 Patents to be contour lines, not seam lines or any other type of visible ornamentation.

**B.     The Utility Patent**

**1.     Claim Construction Principles and the Level of Ordinary Skill**

Claim construction is an issue of law based on underlying factual considerations. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831 (2015). Claim language is given the meaning it would have to one of ordinary skill in the relevant art at the time the application was filed, in view of the patent specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

The level of ordinary skill in the art is informed by several factors, including (a) the type of problems encountered in the relevant art, (b) prior art solutions to those problems, (c) rapidity with which innovations are made, (d) sophistication of

the technology, and (e) the educational level of active workers in the field.  *Custom Accessories, Inc. v. Jeffrey-Allan Indust., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986). In some situations, the level of skill can be gleaned from the patent itself.  *See, e.g., Litton Indust. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163-64 (Fed. Cir. 1985).   simplehuman respectfully submits that the proper level of ordinary skill in the art relevant here includes some experience in industrial design, but the construction of the disputed terms here do not turn on the precise level of ordinary skill.

When construing claim terms, "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips,* 415 F.3d at 1315 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The prosecution history is also considered and "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Id*. at 1317.

A court may also rely on extrinsic evidence, which is evidence external to the patent and prosecution history, such as dictionaries.  *Id*. at 1317 (*quoting Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)).  But extrinsic evidence, such as dictionaries, may not be used to alter the meaning of claim terms in a manner inconsistent with the intrinsic evidence.  *Id*. at 1318-19.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

2. **The Disputed Terms**

a. **"the enclosing wall having a recess at its bottom end"**

| Language of Claim 1 | simplehuman's Proposed Construction | iTouchless' Proposed Construction |
|---|---|---|
| 1. A trash can assembly, comprising: a shell having a top end and a bottom end, the shell having a metal enclosing wall that defines a periphery, **the enclosing wall having a recess at its bottom end**; | No construction necessary, the plain and ordinary meaning should apply; to the extent the Court concludes a construction is necessary, it should be construed as follows: "**the enclosing wall having an indentation at its bottom end**" | This term is indefinite. If amenable to construction, it should be construed as follows: "**the enclosing wall (metal enclosing wall) is set back to define an indentation or alcove at the lower portion**" |

This term is readily understandable to a juror and needs no further clarification or construction. Words such as "recess" and "bottom" are common. There is no special or limiting definition in the specification or the file history. The specification explains that a recess can be formed in the enclosing wall of the shell by cutting a hole near the bottom end. Stewart Decl., Ex. 3 at 3:25-27, Figs. 1, 3. The recess in the enclosing wall of the shell can be fitted with a corresponding plastic recess panel. *Id*. at 3:27-28. This panel is referred to in the patent as "recess 36." *Id*. This can be seen in Figures 1 and 3 from the patent, which are shown below with "recess 36" circled in red:

/ / /

/ / /

/ / /

/ / /

/ / /



FIG.1



FIG. 3

Stewart Decl. Ex. 3 at Figs. 1 and 3.

In the file history, the patentee similary explained that the recess panel "is fitted in a recess provided at the bottom end of the shell."  Stewart Decl., Ex. 5 at 4. Because it is readily understandable, simplehuman respectfully submits that the term "the enclosing wall having a recess at its bottom end" needs no further clarification or construction.  *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.")  The court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Claim construction "is not an obligatory exercise in redundancy." *Id.*

/ / /

1    To the extent the Court disagrees and concludes that a further clarification or

2    construction is necessary, simplehuman submits that it should be construed as "the

3    enclosing wall having an indentation at its bottom end."  This construction reflects

4    a dictionary definition of "recess" as "indentation."  Stewart Decl., Ex. 6.  This is

5    consistent with the specification's description and depiction of the recess forming an

6    indentation in the enclosure wall at its bottom end.  Ex. 3 at 3:25-27, Figs. 1, 3.

7    iTouchless' proposed construction does not clarify this disputed term—it

8    obscures it.  Saying the wall "is set back" is not as clear as the actual claim language

9    that simply provides a wall "having a recess."  Moreover, saying the "wall is set

10   back" suggests the entire wall somehow forms an indentation or alcove, while the

11   claim language and specification simply recite and show the enclosing wall having

12   a recess at its bottom end.  *Id*. at 3:26-30, 7:31.

13   Moreover, this term is not indefinite, as iTouchless asserts.  A claim is

14   indefinite only if it fails to "inform those skilled in the art about the scope of the

15   invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc*., 572

16   U.S. 898, 910 (2014).  The focus is thus on the claim language and whether an

17   ordinary artisan can understand that language in the context of the patent.  There can

18   be no real dispute that the term "the enclosing wall having a recess at its bottom end"

19   can be understood with reasonable certainty.  Again, those are common words and

20   readily understandable.  And the patent describes and depicts the recess.  Ex. 3 at

21   3:25-27, Figs. 1, 3.  There is sufficient guidance in the plain claim language and the

22   specification for reasonable certainty regarding the scope of the invention.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

b.    **"curved recess panel"**

| Language of Claim 1[1] | simplehuman's Proposed Construction | iTouchless' Proposed Construction |
|---|---|---|
| a **curved recess panel**, separate from the shell, that is fitted in the recess, the **curved recess panel** made of a non-metal material | No construction necessary, the plain and ordinary meaning should apply; to the extent the Court concludes a construction is necessary, it should be construed as follows: "**a curved panel that defines an indentation**" | "**a separate part or surface that is bent or formed in a continuous curve, arc or arch across the entire part or surface.**" |

This term is also readily understandable to a juror and needs no further clarification or construction.  In addition to "recess," which was discussed above in Part II.B.2.a, the remaining words "curved" and "panel" are common and within the lay understanding.  There is no special or limiting definition in the specification or the file history.  The specification describes "a plastic curved panel that defines the actual recess 36."  Stewart Decl., Ex. 3 at 3:27-28.  And again, the "recess 36" can be seen in Figures 1 and 3.  Simplehuman respectfully submits that this claim term needs no further clarification or construction.  *See Phillips*, 415 F.3d at 1314.

To the extent the Court disagrees and concludes that a further clarification or construction is necessary, simplehuman submits that it should be construed as "a curved panel that defines an indentation."  As discussed above in Part II.B.2.a, this construction reflects a dictionary definition of "recess" as "indentation."  And this is consistent with the specification's description that the recess "extends upwardly for

---

[1] In addition to Claim 1, this term is also included in claims 7 and 15.  The parties agree each instance of the term should be given the same construction.

1  a short distance and extends into the interior confines of the shell."  Stewart Decl.,

2  Ex. 3 at 3:28-31.

3          iTouchless proposes to change the readily understandable term "curved recess

4  panel" to "a separate part or surface that is bent or formed in a continuous curve, arc

5  or arch across the entire part or surface."  iTouchless' proposed construction fails to

6  respect the plain claim language and seeks to improperly add additional

7  requirements or features.  There is no requirement in the claim language that the

8  curve be "continuous" or that the curve extend "across the entire part or surface."

9  iTouchless attempts to improperly graft on additional requirements regarding a

10  specific type of curvature when the plain language of the claim is not so limited.

11  *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330-31 (Fed. Cir.

12  2007) (there must be a textual reference in the actual language of the claims to

13  support adding additional structural requirements via a proposed construction).

14          Even if iTouchless attempts to argue that "recess 36" shown in Figures 1 and

15  3 of the patent has a continuous curve or a curve that extends across the entire

16  surface, a proper claim construction cannot deviate from the terms' plain meaning

17  simply because a preferred example described in the specification includes

18  additional features or limitations.  *Acumed*, *Inc. v. Stryker Corp.* 483 F.3d 800, 808

19  (Fed. Cir. 2007) (it is improper to read into the claim limitations from the

20  specification, even if those limitations are found in a preferred embodiment).  In fact,

21  the patent itself emphasizes that the figures and the specification describe examples

22  of the inventions and are not intended to be limiting.  Stewart Decl., Ex. 3 at 2:55-

23  60.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

PLAINTIFF'S OPENING CLAIM          -16-          Case No. 4:19-cv-02701-HSG
CONSTRUCTION BRIEF

c.    **"foot pedal partially positioned in the recess panel"**

| Language of Claim 1[2] | simplehuman's Proposed Construction | iTouchless' Proposed Construction |
|---|---|---|
| **a foot pedal partially positioned in the recess panel** | No construction necessary, the plain and ordinary meaning should apply; to the extent the Court concludes a construction is necessary, it should be construed as follows:<br><br>"**a foot pedal partially positioned within the limits of the curved panel that defines an indentation**" | This term is indefinite. If amenable to construction, it should be construed as follows:<br><br>"**to some extent, put in a place that is within the limits of a recess panel (separate surface)**" |

This term is also readily understandable to a juror and requires no further clarification or construction. In addition to "recess," which was discussed above in Part II.B.2.a, the remaining words "partially," "positioned," and "panel" are common and within the lay understanding. There is no special or limiting definition in the specification or the file history. The specification describes that "recess 36 . . . is adapted to receive a foot pedal," and that the foot pedal can be positioned so that only a portion extends beyond the periphery of the shell. Stewart Decl., Ex. 3 at 3:20-22, 3:58-61. The patent refers to the foot pedal as "foot pedal 40" or "pedal 40" and shows an example of it in spatial relation to the shell and recess in Figures 1 and 3, which are reproduced below:

/ / /

---

[2] In addition to Claim 1, this term is also included in Claim 15. The parties agree each instance of the term should be given the same construction.



FIG.1

FIG.3

In the file history, the patentee expressly referenced Figures 1 and 3, in addition to portions of the specification, in similarly explaining that "the foot pedal is partially positioned in the curved recess panel." Stewart Decl., Ex. 4 at 4. Because it is readily understandable, and because the specification and file history impose no specialized definition on it, simplehuman respectfully submits that the term "a foot pedal partially positioned in the recess panel" needs no further clarification or construction. *See Phillips*, 415 F.3d at 1314.

To the extent the Court disagrees and concludes that a further clarification or construction is necessary, simplehuman submits that this claim term should be construed as "a foot pedal partially positioned within the limits of the curved panel that defines an indentation." This construction reflects a dictionary definition of "recess" as "indentation," which was discussed above in Parts II.B.2.a and II.B.2.b. And the parties agree that to the extent a further construction is necessary, a reference to "within the limits" should be included. *See also* Stewart Decl., Ex. 7.

iTouchless' proposed construction also seemingly includes a construction of "partially" as "to some extent" and "positioned" as "put in a place."  simplehuman submits these changes are unnecessary because "partially" and "positioned" are readily understandable.  If anything, iTouchless' proposal renders the term meaning less clear.

Moreover, this term is not indefinite, as iTouchless asserts, because it informs the ordinary artisan of the scope of the invention with reasonable certainty.  *See Nautilus,* 572 U.S. at 910.  There can be no real dispute that the term "a foot pedal partially positioned in the recess panel" can be understood with reasonable certainty.  Again, those are common words and readily understandable.  In addition, the patent describes and even depicts this arrangement of foot pedal 40 in relation to the recess and shell (Stewart Decl., Ex. 3 at 3:20-22, 3:58-61, Figs. 1, 3), and it was reiterated and emphasized in the file history using the same language as the claim term (Stewart Decl., Ex. 4 at 4).  There is sufficient guidance in the plain claim language and the specification for reasonable certainty regarding the scope of the invention.

### d.   "positioned inside the periphery of the shell"

| Language of Claim 1[3] | simplehuman's Proposed Construction | iTouchless' Proposed Construction |
|---|---|---|
| with a portion of the foot pedal **positioned inside the periphery of the shell** | No construction necessary, the plain and ordinary meaning should apply. | "**put in a place within the interior of the metal enclosing wall that defines the periphery**" |

This term is also readily understandable to a juror and requires no further clarification or construction.  There is no special or limiting definition in the specification or the file history.  As explained above in Part II.B.2.c, the specification

---

[3] In addition to Claim 1, this term is also included in Claims 2, 3, and 15.  The parties agree each instance of the term should be given the same construction.

describes that the foot pedal can be positioned so that only a portion extends beyond the periphery of the shell.  Stewart Decl., Ex. 3 at 3:20-22, 3:58-61.  An example of this arrangement, with foot pedal 40 in spatial relation to the recess and shell, is shown in Figures 1 and 3, as detailed above in Part II.B.2.c.  In the file history, the patentee expressly referenced Figures 1 and 3, in addition to portions of the specification, in similarly explaining the arrangement of the foot pedal.  Stewart Decl., Ex. 5 at 4.  Because it is readily understandable, and because the specification and file history impose no specialized definition on it, simplehuman respectfully submits that the term "positioned inside the periphery of the shell" needs no further clarification or construction.  *See Phillips*, 415 F.3d at 1314.

iTouchless' proposal would require the foot pedal to be positioned "within the interior of the metal enclosing wall that defines the periphery."  But that is not what the claim says.  The claim does not say a portion of the foot pedal is positioned inside the wall that defines the periphery—it simply says a portion is positioned inside the periphery.  Stewart Decl., Ex. 3 at 7:37.  iTouchless' proposal conflicts with the plain language of the claim.

iTouchless' misstep in its proposed construction may have been an overreliance on an extrinsic dictionary definition of "inside."  As the Federal Circuit has repeatedly warned, extrinsic evidence, such as dictionaries, cannot be relied upon "at the expense of a fair reading of the claims."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1377 (Fed. Cir. 2014).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

e.    **"link assembly"**

| Language of Claim 1[4] | simplehuman's Proposed Construction | iTouchless' Proposed Construction |
|---|---|---|
| a **link assembly** coupling the foot pedal and the lid. | this term is subject to § 112(6), it should be construed as follows:<br><br>*Function*: **coupling the foot pedal and the lid**<br><br>*Structure*: **a horizontal rod and a vertical rod that are connected, and equivalents** | **"a collection of mechanical parts including a horizontal rod and a vertical rod fitted together to structurally connect the foot pedal to the lid. The horizontal rod has an L-shaped (i.e., at 90-degrees) terminal end that extends out of the horizontal plane of the rod, and which is positioned adjacent or on the foot pedal, and an opposing end that has an L-shaped leg (i.e., at 90 degrees) that also extends out of the horizontal plane of the rod and is secured to a generally L-shaped (i.e., 90-degree) plastic hinge."** |

[4] In addition to Claim 1, this term is also included in Claim 15. The parties

35 U.S.C. § 112, ¶ 6[5] provides that a claim element may be expressed as a means for performing a specified function, and the claim will be construed to cover the corresponding structure in the specification and its equivalents.  While expressly including the term "means for" in the claim limitation is a common sign the patent applicant is relying on 35 U.S.C. § 112, ¶ 6,  it is not required to trigger that statutory treatment.  The "essential inquiry" is whether the words in the limitation would be understood by those of ordinary skill as the name for structure.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  Here, the parties agree the term "a link assembly coupling the foot pedal and the lid" is subject to 35 U.S.C. § 112, ¶ 6.

The "function" for purposes of construing the term under 35 U.S.C. § 112, ¶ 6 is recited in the term itself: "coupling the foot pedal and the lid."  There can be no reasonable dispute on that part of the analysis.  *Micro Chem., Inc. v. Great Plains Chem. Co.,* 194 F.3d 1250, 1258 (Fed. Cir. 1999) ("the statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim.").

The dispute between the parties lies in the remainder of the analysis: the proper construction of the "corresponding structure" recited in the specification for performing that function.  The proper construction of the corresponding structure should be limited to the disclosed structure necessary to perform the function, and no more.  *Id.* ("Nor does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function.").  In particular, the details of a preferred embodiment should not be imported into the construction of the corresponding structure when the claim language supports a broader reading.  *See Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1382 (Fed. Cir.

agree each instance of the term should be given the same construction.

[5] Because the '316 Patent was filed before March 16, 2013, the pre-AIA version of 35 U.S.C. § 112 applies.  America Invents Act § 3(n)(1).

2001) (rejecting the district court's construction for importing structural features from a preferred embodiment that were not necessary for performing the claimed function).

Here, the patent provides that "[t]he link assembly 42 has a horizontal rod 64 and a vertical rod 76 that cooperate to translate an up-down pivot motion of the pedal 40 to an up-down pivot motion for the lid 32."  Stewart Decl., Ex. 3 at 4:61-63. Thus, according to the patent, the structure necessary for claimed function of coupling the foot pedal to the lid is a horizontal rod and a vertical rod that are connected.   simplehuman submits this is the proper construction of the corresponding structure of this term.

iTouchless would add additional structure to improperly narrow the claim. iTouchless seeks to import structure details from the preferred embodiment, such as specifying that "the horizontal rod has an L-shaped (i.e., at 90-degrees) terminal end" and "an L-shaped leg (i.e., at 90 degrees)."  iTouchless would also import the detail that the horizontal rod "is secured to a generally L-shaped (i.e., 90-degree) plastic hinge."  While mentioned in the patent, these details are not necessary for coupling the foot pedal to the lid—coupling does not require the horizontal rod to include an L-shaped terminal end or an L-shaped leg; nor does it require securing the rod to an L-shaped plastic hinge.  The horizontal rod and vertical rod can still couple the pedal and lid without those options.  *See Micro Chem.,* 194 F.3d at 1258; *Acromed*, 253 F.3d at 1382.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, simplehuman respectfully submits that Court construe the disputed lines in the two design patents as changes in contour rather than seams, and simplehuman respectfully submits its proposed constructions of the disputed terms in the utility patent are correct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 15, 2020          By:  /s/ Paul A. Stewart
                                  Paul A. Stewart
                                  Ali S. Razai
                                  Jared C. Bunker
                                  Nicole R. Townes
                                  Brandon F. Smith

                             Attorneys for Plaintiff
                             simplehuman, LLC

32611294